United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good afternoon. We have one argument set today, and it was an argument that was initially scheduled before our panel in December, and we moved it to today on request of the party. So Judge Marcus, Judge Pryor, and I are ready to begin. Our case number is number 19-14647, United States v. Aaron Emanuel Walker. Mr. Cohn, whenever you're ready. Thank you, your honor. May it please the court. The first issue I'd like to address is the first sentencing issue, which has to do with the district court's finding that there were 10 or more victims in this case. The government attempts to support that finding by saying that it was a plausible view of the evidence, interpretation of the evidence. But in fact, it's not a plausible interpretation of the evidence because there is no evidence that Mr. Walker was involved with any more than seven victims. And the closest the government comes to evidence is to claim incorrectly that Mr. Walker was involved in this scheme from February to July of 2018. In fact, the defendant objected to this assertion in the PSI and correctly pointed out that at his plea colloquy, the only dates that were shown were two weeks in February. So even if one goes the route, which I would not encourage, that just the mere length of being a participant in a scheme is enough to determine the number of victims. Mr. Cohn, I have a question for you. In paragraph eight of the PSI, it says that Mr. Walker agreed to a conspiracy that included the personal identifying information of 18 individuals. Did you object to that paragraph or was that objected to? Yes, I believe if you read the objections to the PSI, it clearly says he was not involved with more than seven victims. At, yes, page four, page three. And he explained that that simply isn't in the record. Now, Mr. Cohn, is your argument that from a conspiracy allegation involving undisputedly seven victims, you can't make the fair inference that it involved more than 10, or at least not on this record? Well, two points, Your Honor. First, Mr. Walker did not plead guilty to conspiracy. So that's not the offense we're looking at. He pleaded- Right, but that doesn't affect relevant conduct for purposes of the guidelines. I understand. But relevant conduct, Your Honor, has to do with jointly undertaken activity. So the first, and our brief argues correctly, I think, that there's just no evidence that Mr. Walker was involved in jointly undertaken activity that involved more than seven victims. The victims here, just to be clear here, were the persons whose identity was taken. Right, let me ask you to help me with something that I have not been able to understand after reading the sentencing transcript several times and the PSI and your briefs. And I don't think it's a fault of any of you. I just think it's very complicated. Can you help me try to understand, and I'll ask Ms. Danish-Farr the same thing, what this state sentence consisted of and how things progressed so that we can figure out how to properly categorize it for guideline purposes? Okay, I take it, Your Honor, you're now moving on to the second sentencing issue, not the number of victims. Correct, correct. Okay, thank you, Judge. Yeah, the viewpoint there is all I've seen. I agree with you about the very limited information in this record about just exactly what happened in that state court. So all I could go on is the passing statement in the PSI of, and I don't have it in front of me, but it's there in the record, of sentence suspended three and a half years with credit for time served of 140 days. I'm paraphrasing my recollection. That's all we have, even in the most, and I am going to add this, Your Honor, because I'm sort of guessing that that's part of your question. That's very little information to go on in terms of what the intent of the judge is. Usually we have a sentencing transcript and we have more information about what happened. So this is very, very limited information. But even there, I give two reasons why Mr. Walker should prevail on that point. The first one is discussed extensively in our brief, so I will be brief, which is that the time served has to do with when you're awaiting the system to process your case. It's not a measure of your culpability. The whole point of criminal history points under the guidelines, which is what is at issue here, should he get one criminal point, should he get two, is to measure the seriousness of the defendant's past criminal history, his risk of recidivism. And so whether he happened to be sitting in jail awaiting processing of his case as his trial lawyer objected, 30 days, 60 days, and in this COVID era, a lot longer, is really not material to whether or not it should be a criminal history point and not a basis for it. The additional reason I would argue, which candidly came to me as I was rereading the Mott case on which the government extensively relies in its brief, is that case you'll recall is the Supreme Court case that distinguishes imprisonment from supervised release. And that candidly is the only really policy basis for that decision that had to do with tolling supervised release when you're in pretrial detention. And most of the opinion is looking at the statutory language that doesn't really help us here since we're looking at guidelines, but to the extent that decision was grounded in policy, it said supervised release serves a very different purpose than imprisonment. Supervised release is meant to facilitate reintegration back into society. Imprisonment is meant to punish. Why do I bring this up? Because the error here is that everyone agrees that a suspended sentence is not, for guideline purposes, something where the length of the suspended sentence matters for whether you get one or two or even three criminal history points. That's right there in the guidelines. And what occurred to me rereading Mott is that the drafters of the guidelines likely were treating a suspended sentence like supervised release. A suspended sentence just threatens future imprisonment in case you don't reintegrate into society, in case you violate a condition of your release. So the reasoning of the Fifth Circuit in Fernandez, which the government relies on in this case, that when a judge imposes a state judge suspended sentence and then takes account of the time served in determining, say, the length of the suspended sentence, even that just doesn't make sense because the suspended sentence length is not material for this guideline purpose. The suspended sentence could be one year, two years, three years, it's still not gonna qualify for two criminal history points. Right, two quick questions. If there isn't enough evidence for the 10 victim enhancement, what does that put Mr. Walker's advisory guidelines at? I hope I have that in the brief, Your Honor. I think he, I would have to go back, I apologize, to see just how many levels that was. I think it was a two level enhancement. You're right about that, yes. Okay, and then I would need to, I apologize, Your Honor. I'm happy to do the math now and take up everyone's time, but- No, no, that's okay. That's okay. We'll take a look at it. Thank you, Judge. I have a question for you, Mr. Cohen. If you could comment for me. When I looked at what the district court said, with regard, I'm still talking about the sentencing issue that Judge Jordan referenced for you and you talked about a moment ago. That's this 140 days matter and how we treat it. The district judge said the following, and I'd like you to comment. I'm quoting now. If he, referring to your client, would have violated his community control, it seems clear to me that he would not serve three and a half years. He would serve three and a half years minus 140 days. That suggests that the 140 days was not suspended. It would not be suspended because it was, or would be credited toward him if he violated community control. How do we consider the 140 days that he actually served to be suspended? Wouldn't it count or wouldn't it, I suppose more properly put, have counted if he had violated community control? He wouldn't have to serve the full three and a half. He would get credit for 140 days because he actually served that time. How would you have us handle this? I say that recognizing, just speaking for myself, that a lot in the record is not terribly clear, but I'm curious how we handle and how we would say 140 days doesn't count for time that he actually served in jail when he actually served 140 days in jail. Right. I'll stay with the two words, have counted, Your Honor. I hope you remember how you corrected yourself and used it. Right. And the point, my interpretation of your words, have counted, was that your recognition that we're talking about threatened punishment here, not actual punishment. Those 140 days would have counted had the suspended sentence become actual. So we're talking about something that never got imposed. The only way it has a reality is my first argument, which is that he was sitting there in jail awaiting processing. And that's not what the guidelines have in mind for evaluating the severity of a person's prior record, prior criminal record. So we can ignore the 140 days that he actually served on the theory that the state court never got around to subtracting it from the three and a half years. And therefore, even though he actually served, we'll treat it as a fiction and ignore it. That's basically the argument. I don't mean to overstate it but I'm really looking for your help on this. No, I understand, Your Honor. I think another way, but fiction is a tough word, but I think what might help is the focus on another aspect of our argument on the sentence pronounced and the intent to impose a time of incarceration for a given offense. A recognition that a person has been in jail for a happenstance period of 140 days without any subsequent imposition of that time or even having no violation and therefore no real use of that time. Yes, in a way, I guess it does become, fiction is a tough word, but if that's the word, it does become something of a fiction to regard that number as measuring my client's prior criminal history. Thanks very much. All right, thank you very much, Mr. Cohen. You've served, you've saved your time for rebuttal. I hope I'm pronouncing it correctly. Ms. Danisch-Flohr. Yes, that's correct. Can you hear me? Yes, thank you. Thank you. May it please the court, Charles O'Donishever for the United States. So starting with the suspended sentence issue, Mr. Walker received 140 days time served on a three and a half year suspended sentence in state court. And as the district held in Fernandez, which dealt with the exact issue in this case, time served cannot be suspended. So here the district court did not clearly err in calculating Mr. Walker's criminal history points based on the 140 days that he served. The fact that, I know that Mr. Cohen argues that the 140 days is a historical fact, but that doesn't mean that it's not part of the sentence pronounced. In Fernandez, the Fifth Circuit held that credit for time served necessarily implies that the state court accorded a sentence reducing value and explicitly took that period of pre-sentence confinement into account. And here the district court similarly arrived at the same conclusion, reasoning that if Mr. Walker had violated community control, he would have been subject to three and a half years minus 140 days. Thus, as part of that sentence, the fact that he served 140 days was computed and taken into account. Judge Marcus, another way to look at this is that Mr. Walker's aggravated stalking charge had a five year maximum in state court. And so had the court given Walker a five year suspended sentence, that actually would have been illegal because if he violated community control and received that five year sentence, it would be 140 days plus five years, which would take him over the five year statutory maximum. So that just shows that the state court does take the 140 days into account. And also with respect to Mr. But you're telling me that the state court system will not give credit for time served on its own? It must, under Florida statute, it must. Right, so even if the state court doesn't give him credit for time served, that's not an illegal sentence because if he violates, when he goes back in, the state court system will give him the 140 days. So my hypothetical, it would only be an illegal sentence in the hypothetical where he would receive the five year statutory maximum as a suspended sentence. But nobody would give him that. Exactly, that's my point. The point is that the state court does take the 140 days of time served into account. And the guidelines actually explicitly contemplate this. So Mr. Cohn argues that the starting point of the analysis is that the pronouncement of the sentence, not the length of the time actually served is a starting point. And we don't actually disagree with that. The first question is what is the sentence pronounced, which is the three and a half years with 140 days credit for time served. But that doesn't actually answer the question of what to do with a suspended sentence. And that's where 4A1.2b2 comes into play, which explicitly contemplates calculating a sentence based on the portion of the sentence that wasn't suspended. And so the second question becomes whether the 140 days of the sentence pronounced qualifies as a non-suspended portion of the sentence under 4A1.2b2. And we argue that you cannot suspend a sentence that already existed. Let me ask you if you could to turn to the 10 victim issue. Yes, absolutely. In your brief, you rely in part on the statement in the pre-sentence investigation report that there were 18 victims in the conspiracy, but Mr. Cohn suggests that there was an objection to that part of the pre-sentence investigation report. So I actually just went back while Mr. Cohn had his part of the argument. I went back and I checked and there was no objection to paragraph eight of the PSI. There was a general objection to basically state that he should be held responsible for fewer than 10 victims, but there was no specific objection to paragraph eight. And as you know, the findings of fact of the sentencing court may be based on undisputed statements in the pre-sentence report. And so if we look at paragraph eight, it not only identifies the 18 victims, the addresses and the social security numbers of the victims that were used, but it also identifies the scope. And it explicitly says that Walker and six other co-conspirators agreed with each other and other unindicted co-conspirators. Let me ask you a question in that regard. Was it not enough that the defendant said, my client is liable for seven, no more, no less. Did he have to also say, literally, I object to paragraph eight, or was it not enough for him to generally say, my position is it's seven, no more, no less. He actually didn't say seven. The government said seven in the objections in the response to the PSI objections, but that number seven doesn't preclude the district court from holding Mr. Walker responsible for 10 or more victims. No, I just asked the question to find out- What happens when there's a conflicting objection? Whether he had consented to paragraph eight in the PSI by his silence, or whether normally if he said nothing, that's it. It's in the record and he's bound to it. But to the extent there was an agreement or an assertion in one form or fashion or another, that his position is it was seven, could that be taken as having interposed a general objection to anything in the PSI that said otherwise? I don't know of any case law on this, but my position would be that he would have to specifically object to that paragraph, because it is contradictory. Well, then let me ask you a different question. Scope of involvement can differ for different players in a conspiracy, and when victims became victims can also vary by date. So did the PSI say anything about when these victims became victims, or when each of the participants were involved in the conspiracy? Because for example, and I'm only using this as an example and a hypothetical, if 10 of those 18 victims were harmed because their identification was used before Mr. Walker became a part of this conspiracy with Mr. Acosta, he can't be held liable for them. So what does the PSI tell us about the dates on when these victims became victims? The PSI does not give us dates. Paragraph 15 of the PSI, to which Mr. Walker did not object, states that he was involved in the fraudulent scheme from February to July of 2018, so that he's responsible for all the criminal acts over the five months, even though I believe he stipulated that he was involved for two weeks in the factual proffer. But even the factual proffer, the parties agreed, it didn't list everything, and that the information in the proffer was sufficient just to prove count seven and 14 of the indictment beyond a reasonable doubt. What evidence was there to support the district court's determination in this regard, which we review only for clear error? Correct. What is the evidential foundation that could be set to support that conclusion? I would have to point to paragraph eight of the PSI, and the fact that we are here on clear error review, and the district court's choice between two permissible views of the evidence was not clearly erroneous, and that the district court made a three paragraph finding on this issue in the transcript, I believe it's pages 45 to 46, and that wasn't clearly erroneous. And what was the basis for the district court's ruling, I guess is what I'm asking you. How did the district court come to this number by saying he was aware of it, he knew it, he knew the other guy, it was reasonably foreseeable, just give me the guts of what supports the- Right, and so for the sake of argument, the district court found that even if the conspiracy were limited to just Acosta and Walker, there were at least 10 victims, and this was a conservative estimate because there were 18 victims, so it's not hard to reach 10 from seven. All right, thank you. If your honors have no further questions, we rest on the arguments in our brief and respectfully ask that you affirm. All right, thank you very much. Mr. Cohn, you've got your five minutes of rebuttal left. We've gone to sentencing issues, your honor, but I do want to note that we, in our briefs, we've acknowledged the guilty plea and pointed out that the elements of the offense were not explained, and in our reply, we talked about how Flores Figueroa makes clear that one element of the aggravated identity theft is knowing the identity that's an actual person, and there was no evidence of the plea colloquy of this, and I just want to make sure the court is aware of this significance of these facts, and in case Judge Jordan needs it to remind him of his persuasive concurrence in United States versus Prézendure on the significance at plea colloquies of defendants understanding the relationship between their conduct and the criminal law. The problem, Mr. Cohn, is that that was only a concurrence and the majority didn't agree with me, and that case involved an aggravated identity theft charge, so what are we supposed to do with Prézendure? I mean, I'm sympathetic to your view, but I got outvoted in that case, so what happens now? Well, your honor, you were right, and this is also, by the way, at one of the two counts of conviction here is aggravated identity theft. I want to preserve that point. I think it was a very good point when you made it, and therefore still a good, very valid observation in this situation, but since I have limited time, let me quickly address- Before you do, just a point that you had raised. The district court here summarized count seven in considerable detail. He says that he's charged with unauthorized access device charge. He points out that the charge ran from the 8th of February, 2018, to the 23rd of February, 18, in the district and elsewhere. He points out that the charge said you knowingly and with the intent to defraud in and use one or more unauthorized access devices, that is social security numbers, issued to other persons during any one year period, and by such conduct, you did obtain anything of value exceeding $1,000 or more during that period, and that conduct affected interstate and foreign commerce in violation of federal law. And then the judge asks, do you understand the charge contained in count seven of the indictment? He says, yes, your honor, I do. And then he does the same thing basically with count 14 and asks him again after basically reading, reciting what's in the allegations in 14, ask him, do you understand the charge contained in 14? He says, yes, you do. Why was that not sufficient, particularly when coupled with the plea agreement that he entered where he said he understood, et cetera, et cetera. Why doesn't that satisfy the concern that you raise? Your honor, as your honor knows, Flores Figueroa at the United States Supreme Court held that the defendant has to know that the person who his identity's alleged to have taken or pleaded guilty to is an actual person. That was not covered in the language that you just read. If I may, your honor, turn to the sentencing issues. In particular, my adversary here emphasized that the judge took account of the time served and that word took account occurred again and again and again, those words. And I just wanna emphasize in addition to the points that I made earlier, to be respectful here, so what? Why does it, where in the guidelines do we see that because a state judge took account of time served, took account, that becomes the basis for two criminal history points? It's just not in the guidelines. And it's quite a leap to get from that to two criminal history points. So I just wanted to emphasize that that's not, to my mind, a persuasive argument. I see I'm about to run out of time. I do have one other quick questions for you, Mr. Cohn. I think you're right that the guidelines are just silent on this particular issue, very precisely put. Does the rule of lenity apply to the sentencing guidelines at all? Normally, if there is a clear ambiguity in a statute, and we just can't find an answer in a statute on a criminal matter, we have from time to time applied lenity. We've never answered that question in this court, whether lenity would or could apply to a sentencing guideline. And I'd like your sense of that. Well, Your Honor, I actually, my reply brief deals with that specific issue. So I do recommend perhaps rereading that. The only thing I would add, putting, and in part because I'm a baseball fan where we have the rule that the tie goes to the runner, that in rules, it turns out to be extremely helpful to have a rule that says what happens in the case of a tie. The Supreme Court has very eloquently explained why we shouldn't be keeping in jail people for a longer period of time when the lawmaker has been ambiguous. That's compelling enough. But I would only add that sometimes we have practical concerns too. We need to resolve ambiguities and I urge the court to resolve it in favor of the defendant if that, and to adopt the rule of lenity is a very practical, practical help to courts, I think in this kind of situation. Thank you very much. All right, thank you all very much. We appreciate the help. We'll take the case under advisement and get an opinion out to you as quickly as we possibly can. Thank you both again. Thank you, Your Honor.